UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA

-against-

MICKEY VALDEZ,

                      Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/10/2025
```

14 Cr. 468-2 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Defendant, Mickey Valdez, appeals from the Honorable Gary Stein's July 2, 2025 oral order detaining him pending the adjudication of alleged violations of the terms of his supervised release. *See* ECF No. 618; Mot., ECF No. 614; *see also* ECF No. 617. For the reasons stated below, Judge Stein's detention order is AFFIRMED.

## BACKGROUND[1]

    In 2014, Valdez and numerous codefendants were charged with participating in a wide-ranging narcotics conspiracy tied to the Trinitarios gang in the Bronx. ECF No. 2. In 2015, Valdez pleaded guilty to one count of conspiring to distribute and possess with intent to distribute cocaine base and marijuana, and one count of brandishing a firearm during a drug trafficking offense. *See* ECF No. 230. Valdez was sentenced to a combined sentence of 108 months' imprisonment, to be followed by five years of supervised release. *Id.* At sentencing, the Honorable Shira A. Scheindlin emphasized that, for five years, Valdez "was a shooter for [the Trinitarios], which means that he possessed, brandished, and used weapons to intimidate other gangs in the area." Sent'g Tr. at 10:24–11:2, ECF No. 253. "According to the [2015]

---

[1] The following facts are drawn from the parties' written submissions on bail, the body-worn camera footage and 911 recording the Government submitted to the Court via email on July 7, and the parties' representations at Valdez's presentment before Judge Stein on July 2, *see* ECF No. 620, and at his initial appearance before the undersigned on July 8, *see* 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a] [bail] hearing."); *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004); *United States v. Edwards*, 834 F.3d 180, 200 n.16 (2d Cir. 2016).

presentence report, Valdez would drive into the territory of another group, with guns in the car, and shoot at the rival drug dealers." *Id.* at 11:2–5. Judge Scheindlin underscored that "it's just lucky that somebody didn't get killed while he was busy shooting up in the neighborhood," and "somebody who would do this, who would shoot into a neighborhood, really is a risk to the public." *Id.* at 14:3–10.

Valdez began his period of supervised release in August 2022. Violation Report ("Rep.") at 3. Until the instant arrest, he has—by and large—been a model supervisee. After residing with his family in the Bronx for the first six months of his supervised release term, he moved in with his girlfriend, Edmarie Menalee, and her children, also in the Bronx, where he has remained since. *Id.* at 3. After two drug tests returned positive for marijuana use in January and July 2023, he was referred to Argus Community for outpatient substance abuse treatment, which he successfully completed in March 2024. *Id.* All subsequent toxicology results have returned negative for any illicit substances. *Id.*

Prior to the commencement of his supervised release term, Valdez secured employment at S. Katzman Produce, Inc., a warehouse in Hunts Point. *Id.* In January 2023, he sustained a permanent work-related injury at the warehouse and filed a workers' compensation lawsuit, which was successfully settled in July of that year. *Id.* He then obtained employment as a security guard for City Wide Security and Private Investigations, Inc., where he worked until he was fired in July 2024 after the firm discovered he had a prior felony. *Id.* Valdez then received a Metropolitan Transit Authority New York City Transit Track Safety Certification and began working part-time for Judlau Contracting, Inc., where he remained employed, as verified by Probation, until his arrest on June 29. *Id.*

New York Police Department ("NYPD") officers arrested Valdez and Menalee in the

2

Bronx shortly after midnight on June 29. *See id*. at 5. A few minutes earlier, the NYPD had received a 911 call from an anonymous caller stating that a man who generally matched the description of Valdez was seated in a white Jeep and had pointed a firearm at the caller.[2] When NYPD officers arrived at the address provided by the caller, they saw a white Jeep, registered to Menalee, double-parked on the street. They approached the vehicle and found Valdez seated in the passenger seat and Menalee in the driver's seat. They directed Valdez and Menalee to step out of the vehicle and proceeded to search it, whereupon the officers discovered a loaded handgun in the glove compartment, a knife in the backseat, and some amount of marijuana. Valdez and Menalee were both arrested and charged with firearm-possession-related offenses. Rep. at 5.

In a videotaped post-arrest statement, Menalee stated that "everything" in the car was hers, including the gun, which she claimed to have purchased in December 2024 for $600 from an unknown individual in the Bronx. Opp. at 5 n.7, ECF No. 615. She further claimed that Valdez, her boyfriend with whom she resides, was not aware of the firearm. *Id.* In his own post-arrest statements, Valdez disclaimed any knowledge of the gun. *See id.* at 4–5.

Valdez was arraigned in Bronx County Criminal Court on June 30 and released on a $3,000 bond. Mot. at 2; Rep. at 4. The next day, he contacted the United States Probation Office to inform the office of his arrest, as required. ECF No. 617. Probation directed Valdez to report to its office the following day, which he did, whereupon he was arrested pursuant to a violation of supervised release warrant issued by this Court. *Id.*; Rep. at 4. Later that day,

---

[2] References to the 911 call and the circumstances of Valdez's arrest are based on the 911 call recording and the NYPD body-worn camera footage the Court received via email from the Government on July 7, 2025.

Valdez was presented before Judge Stein and detained based on risk of danger to the public. ECF No. 618; ECF No. 620 at 34:12–13.

By letter motion dated July 5, Valdez requested review of Judge Stein's detention order. Mot. The Government opposed the motion on July 7. Opp. The Court heard argument with respect to bail at Valdez's initial appearance on July 8.

## DISCUSSION

I. Legal Standard

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008). In contrast to ordinary pretrial detention, in which the Government bears the burden to establish the need for detention, 18 U.S.C. § 3143(a)(1) and Federal Rule of Criminal Procedure 32.1(a)(6) set forth a rebuttable presumption of detention for a defendant who is presented on an alleged violation of supervised release. Such a defendant bears the burden to establish, by "clear and convincing evidence," that he "will not flee or pose a danger to any other person or to the community." Fed. R. Crim. P. 32.1(a)(6).[3]

In determining whether a defendant has satisfied his burden, the Court considers (1) the nature and circumstances of the specifications; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of any danger the defendant poses to anyone in the community. *See* 18 U.S.C. § 3142(g).

II. Analysis

The Court finds that Valdez has not met his burden to establish by clear and convincing

---

[3] Valdez contends that the Court lacks the statutory or inherent authority to detain him pending a revocation hearing. Mot. at 2. The Court disagrees for the reasons stated on the record at the initial appearance on July 8.

evidence that he does not pose a danger to anyone in the community.

The first two factors the Court is required to consider weigh in favor of detention. Valdez faces five specifications related to unlawful possession of a loaded firearm. *See generally* Rep. Possessing a loaded firearm while on supervised release subject to a mandatory prohibition on firearms possession, as a person previously convicted of a federal firearm offense, would be—if proven—a serious violation. Valdez contends that the Government has presented no evidence that any of Valdez's DNA was found on the weapon. Mot. at 5. He further emphasizes that Menalee claimed ownership of the gun, and her post-arrest statement that Valdez did not know about the gun is consistent with Valdez's own statements denying possession. The Government has presented at least some evidence, however, of both actual and constructive possession. The 911 caller claimed that a man matching Valdez's description and location in a vehicle matching the vehicle in which Valdez was encountered had pointed a gun at the caller. Just minutes later, police found a loaded handgun inside of the glove compartment directly in front of where Valdez was seated. Even assuming the firearm belonged to Menalee as she admitted in her post-arrest statement, it is reasonable to believe that Valdez, who resides with Menalee and was allegedly selling marijuana with her earlier that night, was aware that she owned the firearm and that she had it in her Jeep that evening. *See* Opp. at 5 n.7.

The third and fourth factors—the history and characteristics of Valdez and the nature and seriousness of any danger he poses to others—present a mixed picture. The defense does not dispute that Valdez's 2015 convictions for which he is now on supervised release are offenses of an extremely serious nature. As Judge Scheindlin stated at sentencing, Valdez's conduct as an "enforcer" in the Trinitarios gang presented a unique level of reckless dangerousness to the community. Valdez argues that it has been more than ten years since he was convicted of those

5

crimes, and his largely exemplary conduct over the course of his term of supervised release demonstrates that he is sincerely rehabilitated and no longer presents a danger to others. Mot. at 3, 5. But the Court cannot ignore the circumstances of Valdez's arrest. The allegations in the 911 call—although they were made anonymously and may never be fully corroborated—are serious allegations that, if even partially true, suggest Valdez has relapsed into dangerous criminal conduct involving possession (and possible brandishing) of a loaded firearm. Valdez argues that, despite the circumstances surrounding his arrest, the fact that he was released on bail by the Bronx Criminal Court demonstrates that he does not pose a danger to others. Mot. at 5. As the Government correctly points out, however, "the state court applied a different legal standard that weighed different factors, and likely did so in the context of a less fulsome record than is before this Court." Opp. at 14 n.17.

In sum, the record of Valdez's history and characteristics and the danger that he poses to others is mixed. But, weighing the second and third § 3142(g) factors together with the first and second, the Court finds that the balance of the factors falls in favor of detention. Accordingly, Valdez has not met his burden to prove by clear and convincing evidence that he does not pose a danger to any person in the community.

## CONCLUSION

For the foregoing reasons, Judge Stein's detention order, *see* ECF No. 618, is AFFIRMED.

SO ORDERED.

Dated: July 10, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge